[Civ. No. 8518.   Third Dist.   Apr. 29, 1955.]

ELMER R. LEWIS et al., Respondents, v. MARGARET R. JOHNSON, Appellant.

John C. Harris for Appellant.

S. C. Young and Edward R. Solinsky for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment quieting respondents' title to four unpatented mining claims as against the appellant's adverse claims thereto. It stands without challenge that at one time prior to October 1, 1950, the appellant was the owner of rights to the subject mining claims which were originally acquired pursuant to 30 U.S.C.A. 26, which provides that locators of mining locations on any mineral vein, lode or ledge situated on the public domain, their heirs and assigns, have the exclusive right of possession and enjoyment of the surface of such locations and of various lodes and ledges therein so long as such locators or their heirs or assigns comply with the laws of the United States and of this state governing their possessory title. The trial court found that appellant had lost all right to said mining claims by failure to perform "the annual assessment work" required by governing statutes and that after such loss respondents had exercised their right to acquire possessory title to said claims by relocation in their own right. Respondents, as plaintiffs, made certain preliminary proof, and having rested their cause appellant moved for a nonsuit, which motion was denied. Appellant then presented her defense, based on evidence of a chain of title deraigned from the original notices of location and the performance of the annual assessment work. Her proof as to the doing of the assessment work was challenged and a number of witnesses were called, the burden of whose testimony was that appellant had not, in fact, done the amount of work called for by the statutes. The case was ordered submitted upon briefs, and appellant's reply brief pointed out the lack of any proof in the record that within 90 days after the date of location respondents had performed discovery work as required by section 2304 of the Public Resources Code. This section requires that within that period the locators either sink a discovery shaft upon a claim to a depth of at least 10 feet from the lowest part of the rim of the shaft at the surface, or drive a tunnel or open cut upon the claim to at least 10 feet below the surface, or excavate an open cut upon the claim, removing

therefrom not less than 7 cubic yards of material. Section 2307 of the Public Resources Code provides that failure or neglect of a locator to comply with the requirements of section 2304 renders the location null and void. Upon this lack of proof being so pointed out, respondents moved the trial court for leave to reopen to supply the needed proof, which motion was opposed by appellant, but granted by the trial court. Thereafter evidence material to that issue was taken. At the close of that evidence the entire cause was submitted to the court for decision. The trial court announced its decision in favor of respondents and thereafter signed and filed findings of fact and conclusions of law, and entered judgment quieting respondents' title as against the claims of appellant.

For reversal appellant first contends that the reopening of the cause upon motion of plaintiffs to supply the missing proof of discovery work was an abuse of the court's judicial discretion. This contention cannot be sustained. ██ Speaking generally and unless prejudice be affirmatively shown, it is within the discretion of a trial court to reopen a cause at any time before a trial has been concluded and its decision has been rendered. (*Bazet* v. *Nugget Bar Placers, Inc.,* 211 Cal. 607, 612 [296 P. 616].)

Appellant next contends that the court's denial of defendant's motion for a new trial on the ground of insufficiency of the evidence, and error at law occurring at the trial, was erroneous. Appellant also assigns error in that she claims the evidence is insufficient to justify the findings. We shall treat these two assignments of error together. It appears that from the assessment year of 1942-1943 to the beginning of the assessment year 1949-1950 Congress had granted a moratorium as to the requirements for annual assessment work; and that as to the assessment year 1949-1950 the time for doing the assessment work was extended to October 1, 1950. During the moratorium period appellant had done no work upon the claims. She was not required to do any. She had, as required by statute, filed of record each year a notice of her desire to continue to hold the claims. As to assessment work done during the assessment year 1949-1950 there was much testimony on behalf of appellant by a number of witnesses which, if accepted by the trial court, would have supported a finding that the assessment work had been done. On the other hand there was much testimony by an even greater number of witnesses that sufficient work had not, in fact, been done and that such meager work as was done was

not assessment work but was nothing more than renewing coverings over existing shafts in the interest of safety, and repairing or partially reconstructing a small cabin for general purposes. While a court will not substitute its own judgment as to the wisdom and efficacy of the method employed in developing a mine in place of that of the owner of the claim, nevertheless this testimony went to the question of whether or not any assessment work had been done and, if so, as to whether or not that work furnished the necessary quantum to hold the claims. The evidence was so sharply conflicting that the trial court was necessarily compelled to weigh the credibility of the various witnesses in determining the truth. Under such circumstances we cannot hold on appeal either that the findings were not amply supported by the evidence or that the court abused its discretion in refusing a new trial. Typical of evidence supporting the claims of appellant is the following: There had been filed on her behalf an affidavit or proof of annual labor sufficient on its face to show the performance of the required amount of assessment work within the time limited. Mrs. Gosselin, a daughter of appellant, testified that she and her husband had done labor and made improvements on the claims in excess of $100 for each claim; that this included timbering and boarding two existing shafts, cleaning up brush, making a trail wide enough to haul logs over, and cleaning the access road into and within the boundaries of the claims. She testified to the expenditure of money furnished by her mother in the amount of $300, all of which she said was spent for lumber, supplies and hired labor, and that she and her husband added funds of their own to meet the costs. A Mr. Roth testified for appellant that he worked on the claims during the month of July, 1950, and then commencing in late September, worked continuously until beyond the limited time for completing the assessment work. Mr. Erickson worked with him and so testified. They said they built a cabin, commenced tunneling on one of the claims, going into the hillside a distance of 50 feet, and timbering some 25 feet underground. Roth's testimony was that the cost of the house would be as much as $400 and the value of the tunnel work as much as $1,000. ■ As opposed to all this, Elmer Lewis, one of the plaintiffs, testified that during the assessment years 1949-1950 and 1950-1951 he lived on one of the claims all of the time and inspected the properties every week and sometimes oftener; that he saw no brush cut, not even a twig; that the only lumber used upon the claims by appellant was old lumber picked up on the

property and nailed around the timbers of a shaft to keep stock and people from falling in; that nothing was done to support any ground work; that no timbering was done inside any shaft; that he never saw anyone working on these claims until Roth came there in September of 1950. There were other witnesses who testified generally to the same effect as to the lack of any substantial work being done.

Appellant challenges the sufficiency of the evidence to sustain a finding that respondents have done such discovery work as was necessary to perfect their locations of the claims. But there was testimony, that we must assume the court accepted as true, tending to show that the locators had discovered mineral veins bearing ore in place; that they had panned and assayed for values, finding the rock to be gold and silver bearing, the quantities shown by the assays running from a few dollars a ton to more than $100 a ton; that within the required 90 days after location, discovery shafts, open cuts and other excavations were sunk to the required depths and specifications and that in general all of the requirements of the law requisite to valid location of the claims had been faithfully performed. It is, of course, true that the affidavits that these things were done, when filed with and duly certified by the county recorder, constituted prima facie evidence of the performance of labor in the making of improvements as recited therein. For these reasons we cannot sustain appellant's contention relating to the making and perfection of the locations. This same statutory rule of presumption of the truth of recitals in the recorded affidavits was sufficient answer to appellant's motion for nonsuit. No error can be ascribed to the denial of that motion.

Appellant claims prejudicial error in two rulings of the trial court concerning the admission and exclusion of evidence. It appeared that Mr. Roth had for a long time had a good deal to do with caring for appellant's interest in the claims, having done work on them over a long period of years. He also seems to have been mainly in charge of the assessment work done during the vital assessment year 1949-1950. On cross-examination it was developed that, although testifying at length as to the nature, and quantum and the value of assessment work done during that year as extended, he had nevertheless promptly upon the expiration of the period for doing the assessment work relocated the claims in his own name, an action which of course, if unexplained, tended to prejudicially affect the testimony he had given, favorable to appellant's

cause. He, also, when asked if he had personally filed any proof of the labor he testified had been done on behalf of appellant, replied that he had never intended to do so, a statement which again tended to challenge his good faith. On redirect examination counsel for appellant sought to clarify the situation created by the effect of his testimony on cross-examination, and the following occurred. By counsel for the appellant: "Q. Mr. Roth, you stated just immediately preceding our recess here that you didn't ever intend to file a proof of labor after you did this work on this tunnel, this 40 foot tunnel. What did you mean by that? A. I didn't intend to do it for the reason that I felt I was already paid for the reason I had a lease being executed a year or two prior to this—I'll say back almost a year before I came up here. Q. Is that the lease of these six claims that the defendant claims she owns? A. That is right. Q. And is that still in process of being executed and delivered to you? A. Yes." At this point counsel for the respondent moved to strike out the last question and answer upon the ground, it seems, that it was inadmissible because the lease referred to had not been executed and delivered and was, therefore, not a lease. Counsel for the appellant stated that the testimony was for the purpose of showing Roth's purpose in doing the work on the claims. The court struck out the testimony. We are unable to find anything material in this episode and certainly we could not ascribe prejudicial error to the court's order. ▆ Counsel for the appellant then asked Mr. Roth this question: "Q. Did you ever during 1950, intend to file a location on any of these six claims belonging to Margaret Johnson?" Roth had testified that he had posted location notices and had also said he had never intended to file proof of labor. He had said nothing about intention to record notice of location. At this point counsel for respondents objected that whether or not Roth intended to file for record, a location notice was immaterial and this objection was sustained. It is difficult to say that any right of appellant was injured thereby, but in any event no offer of proof was made and we do not know what the witness would have said if he had been permitted to answer the question. Under the familiar rule, therefore, we cannot ascertain whether there was any error or prejudice. He was then asked why he had never filed for record a notice of location after posting the ground. Objection was sustained and the question went unanswered. Again there was no offer to prove what the fact was to which he might have testified. A Mr. Erickson

had spent considerable time on the claims with Mr. Roth during the period that Roth, according to appellant's evidence, was engaged in doing assessment work, and Erickson had testified that he had done a good deal of that work himself. On cross-examination he was asked who employed him to go on the claims and do the work, and he said that there was a verbal understanding or agreement that he and Roth were to be partners in the claims; that Roth also had a verbal agreement with appellant. Counsel for the appellant moved that so much of the testimony as was hearsay with regard to what Roth had told him concerning any understanding with Mrs. Johnson be stricken. The motion was denied. ■ We think that since the matter had been developed on cross-examination and since it cast a doubt upon the appellant's position that the work had been done for her she was entitled to go into the matter redirect and establish what the situation was. However, the matter is of little moment, for it made no difference whether Roth and Erickson were working under a lease, an option or were merely employed by appellant, for in any event the work they did would count as annual assessment work. (*Whitwell* v. *Goodsell*, 37 Ariz. 451 [295 P. 318, 319]— work done by optionee under oral option.)

"The labor or improvement required by the statute ordinarily must be performed or made by the owner of the claim, but it is not necessary that the owner should personally perform the work or make the improvement, since work performed or improvement made by anyone in privity with him inures to his benefit and may be sufficient to preserve the claim. The required work or improvement may be done or made by an owner's authorized agent, or by his legal representative. It is sufficient to preserve the claim, if the required labor or improvement is performed or made, on behalf of the claim, by anyone who has a legal or equitable interest or title thereto, such as by one in possession under an option, by a coowner, by a member of a mining association or a stockholder of a corporation which owns the claim, . . ." (58 C.J.S. "Mines and Minerals," § 70; see also Lindley on Mines, 3d ed., vol. 2, § 407.)

For the reasons given the judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied May 23, 1955, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1955.